Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Attorneys for Plaintiff Joseph Frias

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH FRIAS, Individually,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DOE SHERIFF'S DEPUTIES 1-5, Individually; DOE SHERIFF'S NURSES 6-10, Individually; AND DOES 11-15, Individually, Inclusive,<br><br>　　　　　　　　　Defendants. | Case No. **'22CV675 JO AHG**<br><br>**COMPLAINT FOR:**<br><br>1. **4th AMENDMENT – UNREASONABLE FORCE**<br>2. **14th AMENDMENT – INADEQUATE MEDICAL CARE**<br>3. **ADA – 42 U.S.C. 12312**<br>4. **BANE ACT -- §52.1**<br>5. **BATTERY**<br>6. **NEGLIGENCE** |

COMPLAINT                                                    CASE NO.

# I.

# **STATEMENT OF FACTS**

1. Plaintiff, Joseph Frias ("Joey"), is a 37 year old local San Diegan. He was diagnosed with epilepsy ten years ago. In 2016, he was also diagnosed with an intellectual disability at the age of 30. Joey's favorite pastime is building and racing remote control cars.

2. On July 20, 2020, Joey got a call from his girlfriend's aunt because she was sick and not feeling well. When Joey arrived he encountered an individual who was not supposed to be in the aunt's house. Joey asked him to leave and the man refused. In order to motivate the man to exit the aunt's house, Joey pepper sprayed him.

3. Joey was charged with assault.

4. Joey was transported and booked into George Bailey Detention Facility ("GBDF"), a San Diego County jail. Upon intake, Joey informed the intake nurse that he was diagnosed with epilepsy and bipolar disorder. He also informed the nurse that he was diagnosed with a mild intellectual disability.

5. During intake, and throughout his detention, Joey was administered seizure medication (Dilantin and Kepra), albeit not always consistently. Prior to the incident giving rise to this lawsuit, Joey suffered from multiple grand mal seizures at GBDF, one so severe he was hospitalized at Tri-City.

6. On March 9, 2021,[1] in the dayroom at GBDF, Joey was involved in a physical altercation with two other inmates because they had stolen items from his cell. In response, unknown DOE Deputies pepper sprayed the participants, including Joey.

7. DOE Deputies then shackled Joey in waist chains and escorted him to the medical unit intending to clean the pepper spray off of Joey's face and to address what appeared to be a broken hand. DOE Deputies and Joey walked out of

---

[1] On March 9, 2021, Joey was a pretrial detainee.

the Module C housing unit and down the corridor leading to the medical unit. At this point, Joey walked under his own power and had no mobility issues.

8.  Shortly before reaching the medical unit, Joey stopped walking. He bent over to spit out the pepper spray that was collecting in his mouth. He spit between his shoes. Frustrated with Joey, DOE Deputies placed a spit sock over his head. Joey informed DOE Deputies that he could not breathe with the spit sock over his head. He told DOE Deputies he was going to have a seizure because he could not breathe. (Joey knew that, for him, difficulty breathing was a trigger to causing an epileptic seizure.) Joey took approximately 20 more steps, all while alerting DOE Deputies that he could not breathe. As he was pleading with DOE Deputies to remove the spit sock, Joey began suffering from a grand mal seizure. In the corridor just six feet from the medical unit, Joey fell unconscious as he began to seize.

9.  When Joey woke up, he was in a hospital bed and could not move his legs. Ultimately, a neurologist and orthopedic doctor determined that Joey was paralyzed from the legs down.

10. Based on Joey's incomplete jail medical records, it is believed that when Joey began suffering from a grand mal seizure and fell unconscious, DOE Deputies unreasonably assumed Joey was resisting. Several unknown DOE Deputies tackled Joey to the ground and piled on top of him. Based on information and belief, DOE Deputies used unreasonable force when "securing" Joey as they deployed knee strikes and excessive pressure to Joey's back and neck.

11. According to a medical entry, when Joey first appeared in the medical unit he was in a wheelchair with a spit mask over his head. He was still unconscious. DOE Defendants removed Joey from the wheelchair and placed him on the floor. The medical staff called paramedics and initiated resuscitative breathing efforts. Dr. Gill inserted a nasal trumpet in Joey's nose causing him to

///

vomit. According to a medical entry, Joey regained consciousness a stated, "you guys fucking hurt me."

12. The medical notes indicate that during the 10 minutes it took for paramedics to arrive, Joey was in and out of consciousness ("poorly responsive"). According to the medical entry, during a state of semi-conscious, Joey was "verbally aggressive" with staff.

13. Consequently, DOE Deputies doubled-down on their unreasonable conduct by placing Joey in a WRAP device improperly. Again, at this time, Joey was unconscious and suffering from a grand mal seizure for approximately 10 minutes—he was not resisting or posing a risk of harm to himself or others!



Example of a WRAP device

14. Moments later, the paramedics arrived. Joey was "carried to the gurney by sown staff and Dr. Gill."

15. After days of testing and minimally invasive procedures, doctors determined the nerves in Joey's back were "smashed." At this point, Joey could not even wiggle his toes. On March 19, 2021, 10 days after the incident, Joey underwent a spinal fusion on both sides of the spine from L5-S1.

16. Joey spent one month in the hospital recovering from surgery. Following the spinal fusion, Joey still felt weakness and numbness in his lower extremities. He received daily physical therapy so that he could attempt to walk again. Fortunately, Joey's right leg responded positively as he regained partial mobility and sensation. The left leg was not improved by the procedure.

17. After a month in the hospital, Joey was discharged and spent another two months in the medical unit at Central jail. When he was discharged back into

1   County custody, he was prescribed a wheelchair, a walker, special sheets, special
2   shoes, and bi-weekly physical therapy.  Staff only provided Joey with a wheelchair
3   making mobility even more difficult.
4       18.   To date, Joey has only received **one** physical therapy session.  During
5   that one session, which occurred months after the surgery, the physical therapist
6   told Joey that there was not much he could do since too much time had passed,
7   thereby escalating Joey's condition.
8       19.   Throughout this past year, Joey provided himself with physical therapy
9   in his cell; however, even to this day he requires a wheelchair for distance walking
10  and needs a walker to stand and get up/down.  In a recent medical appointment,
11  Joey was informed that he will need an additional fusion in S3 area as a result of
12  Joey's severe pain and limited mobility in the right leg.
13      20.   In addition to refusing Joey physical therapy, DOE Defendants have
14  also denied Joey reasonable accommodations in the form of special shoes, sheets,
15  and a walker during shower time.  Joey has fallen multiple times because
16  Defendants force Joey to shower without providing him with assistive equipment.
17      21.   The pain and suffering Joey experienced then and now is
18  unmeasurable.  When the incident first occurred Joey was paralyzed.  He could not
19  move his legs or wiggle his toes.  He felt sharp pains throughout his back.  The pain
20  and distress associated with that pain caused many suicidal thoughts.  Since the
21  incident, while the pain has somewhat subsidized and his mobility has increased,
22  Joey, a previously healthy 36 year old, is wheelchair-bound for the rest of his life.
23      22.   In sum, based on available evidence, Plaintiff alleges that while
24  unconscious and suffering from a grand mal seizure, DOE Deputies used
25  unreasonable force, including use of the WRAP device, whether properly or
26  improperly applied, which caused Joey's partial paralysis and permanent disability.
27  Plaintiff further alleges that failure to provide Joey with necessary (and prescribed)
28  ///

COMPLAINT                                          CASE NO.

physical therapy and assistive equipment exacerbated his condition thereby causing additional harm.

## II.

## JURISDICTION AND VENUE

23. This action arises under the Constitution and laws, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. section 1983. The Jurisdiction of this court is invoked pursuant to 28 U.S.C. section 1331. State law claims are alleged as well, over which Plaintiff invokes the Court's supplemental jurisdiction.

24. This case is instituted in the United States District Court for the Southern District of California pursuant to 28 U.S.C. section 1391, as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices, work, and/or reside.

25. Pursuant to the California Government Code, on September 8, 2021, Plaintiff filed his claim with the County of San Diego based on the foregoing incident. The claim was rejected by the County of San Diego on November 15, 2021. Thus, the present complaint is timely, pursuant to California Government Code section 945.6.

26. Furthermore, pursuant to requirements set forth in the Prison Litigation Reform Act, Plaintiff has exhausted all administrative remedies related to the claims alleged herein.

## III.

## THE PARTIES

27. Plaintiff Joey Frias was a resident of San Diego County in the State of California and a citizen of the United States at all times relevant to this complaint. He was injured by DOE Defendants while being detained at GBDF, a County of San Diego jail.

///

COMPLAINT                                                CASE NO.

28. Defendant County of San Diego ("County") is and at all times mentioned herein, was a public entity authorized by law to establish jail facilities responsible for securing and protecting detained and incarcerated citizens and persons. At all-times mentioned herein, the County was responsible for overseeing the operation, management, and supervision of the Sheriff's Department, as well as its jails, deputies, and nurses.

29. The names of the other individual County Deputies/Nurses/Medical staff who are responsible for Plaintiff's injuries are currently unknown to Plaintiff. As such, these individuals are sued herein as DOE COUNTY DEPUTIES 1-5, DOE COUNTY NURSES 6-10, and DOES 11-15.

30. The true names and capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1-15 are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff will amend this complaint to identify said defendants true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES are in some manner responsible for the acts and injuries alleged herein.

31. At all times mentioned herein Defendants named herein as DOES 1-15 were employees, agents, and/or independent contractors of Defendant County, and in doing the acts hereinafter described acted within the course and scope of their employment. The acts of all defendants and each of them were also done under the color and pretense of the statutes, ordinances, and regulations of the County of San Diego and the State of California. In committing the acts and/or omissions alleged herein, all defendants acted under color of authority and/or under color of law and conspired together. Plaintiff sues all public employees named as Defendants in their individual capacities.

///
///

## IV.

## FIRST CAUSE OF ACTION

### 42 U.S.C. Section 1983 – 4th Amendment – Unreasonable Force

### [By Joey Frias Against DOE Sheriff's Deputies 1-5]

32. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

33. To prove an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the officers' use of force was "objectively" unreasonable. The detainee is not required to show that the officers were "subjectively" aware that their use of force was unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015).

34. Here, DOE Deputies knew Joey was epileptic as each DOE Deputy is believed to have escorted Joey to the medical unit for seizure medication on multiple occasions. Also, when walking to the medical unit, Joey informed DOE Deputies that he was having difficulty breathing and was going to have a seizure.

35. DOE Deputies are trained only to use force as necessary and only to the extent needed to prevent a risk of harm to deputies or others. Furthermore, Doe Deputies are trained not to use force or restraints on an inmate that is in severe medical distress and/or unconscious.

36. Despite this knowledge, and the fact that Joey was already placed in waist chains, DOE Deputies were unreasonable by using force in response to Joey's seizure and unconsciousness, as he was not posing a risk of harm.

37. Specifically, in response to Joey seizing and falling unconscious, DOE Deputies were unreasonable to assume Joey was resisting. Assuming DOE Deputies *initially* assumed resistance when Joey started seizing, a reasonable deputy would have instantly realized that Joey's body was contracting uncontrollably. A reasonable deputy would have removed the spit sock to evaluate the inmate, and would have immediately recognized that Joey was unconscious.

38.     DOE Deputies were further unreasonable not to summon medical care when Joey initially started seizing.  Instead, DOE deputies tackled Joey to the ground and piled on top of him. DOE Deputies then deployed knee strikes and excessive pressure to Joey's back and neck.

39.     For reasons unknown, Deputies took additional time to find and place Joey in a wheelchair so that they could transport him a few additional feet to the medical unit.

40.     When Joey first appeared in the medical unit he was in a wheelchair with a spit mask over his head.  He was still unconscious.  DOE Defendants removed Joey from the wheelchair and placed him on the floor.  The medical staff called paramedics and initiated resuscitative breathing efforts.  Dr. Gill inserted a nasal trumpet in Joey's nose causing him to vomit.  According to a medical entry, Joey regained consciousness a stated, "you guys fucking hurt me."

41.     Consequently, DOE Deputies doubled-down on their unreasonable conduct by placing Joey in a WRAP device while he was still experiencing seizures and was in and out of unconscious.

42.      Other than being "verbally aggressive," the medical notes do not indicate any reason why DOE Deputies placed Joey in a WRAP device while he was in the medical unit waiting for the paramedics to arrive.  Meaning, Joey was not resisting, he was not posing a threat to himself or others, nor was he being physically combative.  Therefore, DOE Deputies had no reason to use any force or restraint.

43.     At some point prior to the ambulance's arrival, one medical entry indicates Joey was in pain because of the WRAP device and asked to change the position of the device due to the discomfort.  That request went ignored and unaddressed.

44.     Based on the evidence discovered thus far, it is believed Joey was rendered paralyzed either during the use of force in the corridor or when DOE

Deputies placed him in the WRAP device while he was seizing and unconscious. It is not yet known if the resulting injuries occurred because he had a seizure while being restrained in the WRAP device or if the WRAP device was improperly applied because Joey was unconscious.

45. As a result of the incident, Joey was paralyzed for 10 days. It was only after spinal fusion surgery that Joey was able to regain mobility in his right leg. To date, his left leg is still partially paralyzed. Joey is still in immense pain and cannot stand or walk without assistance. Consequently, Joey battles extreme emotional distress, as he suffers from depression, anxiety, and suicidal thoughts.

46. Because of his injuries, Joey is entitled to monetary damages pursuant to 42 U.S.C. section 1983 to compensate him for the resulting injuries and for the violation of his Constitutional and civil rights.

47. In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to attorney's fees and punitive damages against each DOE Deputy under 42 U.S.C. section 1983, in that the actions of each were done with malice and oppression, and with the intent to violate Plaintiff's right, or was done with a reckless disregard or wanton disregard for Joey's constitutional rights.

## V.

## SECOND CAUSE OF ACTION

**42 U.S.C. Section 1983 – 14th Amendment**

**Inadequate Medical Care**

**[By Joey Frias Against DOE Sheriff's Deputies 1-5,**

**DOE Sheriff's Nurses 6-10, and DOES 11-15]**

48. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

49. Under the Fourteenth Amendment, Joey has a guaranteed right to medical care while in the custody and control of the County.

///

50. Here, DOE Deputies were escorting Joey to the medical unit for the purpose of getting him treatment. On the way, he stopped to bend over so that he could spit out the OC chemicals that were collecting in his mouth. Joey spit on the ground in between his shoes. DOE Deputies then placed Joey in a spit sock despite Joey's clear intent not to spit on them.

51. Not long after, while walking down the corridor, Joey told DOE Deputies that he could not breathe and that he was likely going to have a seizure. For the next 20 steps, Joey continuing warning DOE Deputies that he could not breathe and was going to start seizing. DOE Deputies ignored Joey's pleas. They did not ask questions or take off the spit mask so that Joey could breathe easier.

52. Once Joey began to seize, instead of summoning medical care that was only a few feet away, DOE Deputies tackled Joey, pinned him to the ground, and deployed knee strikes and excessive pressure to Joey's back and neck. As Joey was seizing and unconscious, DOE Deputies retrieved a wheelchair and placed Joey in it, all without removing the spit sock in order to allow maximum airflow and/or to evaluate Joey's medical state.

53. While waiting for the paramedics to arrive, DOE Deputies then interfered with on-going medical treatment, and made Joey's severe medical condition worse, when they decided to apply the WRAP device while he was seizing and unconscious. Use of the WRAP device was unreasonable because Joey was not posing a risk of harm to himself or others.

54. At some point prior to the ambulance's arrival, one medical entry indicates Joey was in pain because of the WRAP device and asked to change the position of the device due to the discomfort. That request went ignored and unaddressed.

55. Neither DOE Deputies or DOE Medical Staff investigated if the WRAP device, was necessary, properly applied, or causing additional damage to Plaintiff.

56. Following the spinal fusion on both sides of the spine from L5-S1. Joey spent one month in the hospital recovering from surgery. Joey was discharged and spent another two months in the medical unit at Central jail. When he was discharged back into County custody, he was prescribed a wheelchair, walker, special sheets, special shoes, and bi-weekly physical therapy.

57. DOE Medical Staff only provided joey with a wheelchair making mobility even more difficult.

58. To date, Joey has only received **one** physical therapy session.

59. Accordingly, DOE Medical Staff responsible for ensuring Joey received the prescribed and necessary physical therapy and assistive equipment was deliberately indifferent to Joey's known partial paralysis.

60. Throughout this past year, Joey provided himself with physical therapy in his cell; however, even to this day he requires a wheelchair for distance walking and needs a walker to stand and get up/down. In a recent medical appointment, Joey was informed that he will need an additional fusion in S3 area as a result of Joey's severe pain and limited mobility in the right leg.

61. In addition to refusing Joey physical therapy, DOE Medical Staff have also denied Joey reasonable accommodations in the form of special shoes and a walker during shower time. Joey has fallen multiple times because Defendants force Joey to shower without providing him with assistive equipment.

62. The pain and suffering Joey experienced then and now is unmeasurable. When the incident first occurred Joey was paralyzed. He could not move his legs or wiggle his toes. He felt sharp pains throughout his back. The pain and distress associated with that pain caused many suicidal thoughts. Since the incident, while the pain has subsidized and his mobility has increased, Joey, a previously healthy 36 year old, is wheelchair-bound for the rest of his life.

/ / /

/ / /

COMPLAINT                                                                                       CASE NO.

63.  Accordingly, Plaintiff is entitled to monetary damages pursuant to 42 U.S.C. section 1983 to compensate him for his injuries and for the violation of Joeys Constitutional and civil rights.

64.  In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to attorney's fees and punitive damages against each DOE Deputy under 42 U.S.C. section 1983, in that the actions of each were done with malice and oppression, and with the intent to violate Plaintiff's right, or was done with a reckless disregard or wanton disregard for Joey's constitutional rights.

## VI.

## THIRD CAUSE OF ACTION

### Disability Discrimination – 42 U.S.C. 12132

**[By Joey Frias Against DOE Sheriff's Deputies 1-5, DOE Sheriff's Nurses 6-10 and DOES 11-15]**

65.  Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

66.  The command of title II of the ADA is succinct: "[N]o qualified individual with a disability shall, by reason of such disability…be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has unambiguously held this provision applies to State prisons and local inmates. The ADA defines "public entity" to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131 (1)(B). Moreover, at all times relevant to his discrimination, Joey was a "qualified individual with a disability" because he was rendered partially paralyzed.

67.  Accordingly, the County jail cannot discriminate against an individual with a disability because of their disability. The jail must also take reasonable steps to give inmates with disabilities equal access to services and benefits offered by the jail, which for Joey, includes showers and recreation time.

COMPLAINT                                                                 CASE NO.

68. As set forth above, to this day, DOE Medical, Nursing and, Correctional Staff continually deny Joey reasonable accommodations in the form of special shoes, a special sheet and a walker. A failure to provide these items causes Joey more pain and likely aggravates his condition. For example, a lack of assistive equipment effects Joey when walking to the shower and while showering. It also affects his ability to take advantage of recreation time. Joey has fallen multiple times because Defendants forced him to shower without providing him with the proper assistive equipment. He has also been denied recreation time by unknown DOE Deputies do to his disability.

69. These continued failures by DOE Defendants has prolonged and exacerbated Joey's injuries and harm. For this reasons, Plaintiff is entitled to all damages awarded under the Americans with Disabilities Act, including but not limited to, compensatory, economic, consequential, and special damages, as well as attorney's fees and punitive damages against each Defendant

## VII.

### FOURTH CAUSE OF ACTION

**Interference with Right By Threat, Intimidation, or Coercion –**

**Bane Act - Civil Code Section 52.1**

**By Joey Frias Against Defendant DOE Sheriff's Deputies 1-5, DOES 11-15, and County of San Diego]**

70. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

71. The Bane Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law. (Civ. Code, § 52.1, subds. (b)-(c).)

///

///

72. Plaintiff is guaranteed a right to be free from unreasonable force and cruel and unusual punishment. In this context, Plaintiff also has a guaranteed right to adequate medical care.

73. Based on information and belief, and the Sheriff Department's custom and practice, DOE Deputies, by way of force, threat, intimidation, and/or coercion, informed Joey that they would use violence and force against him if he did not stop resisting. However, Joey was seizing, not resisting.

74. Minutes later, DOE Deputies, by force and violence, continued to threaten, intimidate, and coerce Joey by improperly applying the WRAP device because he was "verbally aggressive" and stated "you guys fucking hurt me." Notably, medical records indicate Joey was not physically mobile during this time! He was in and out of consciousness and still experiencing seizures at the time DOE Deputies improperly applied the WRAP device.

75. As explained in detail above, DOE Defendants that are denying Joey the special accommodations ordered by the doctors have also interfered with Joey's right to be treated equal, as well as his right to adequate medical care. In this regard, DOE Defendants are coercing Joey by forcing him to accept fewer privileges and benefits than other inmates.

76. The intentional and callous conduct alleged above was intended to cause Joey physical pain and emotional distress. As a result of these acts, Plaintiff suffered the injuries and damages described in the above paragraphs, entitling him to damages in an amount to be proven at trial, and in accordance with Civil Code section 52.1, including attorney's fees and punitive damages.

/ / /
/ / /
/ / /
/ / /
/ / /

COMPLAINT                                                                CASE NO.

# VIII.

# FIFTH CAUSE OF ACTION

### Battery

**[By Joey Frias Against DOE Deputies 1-5 and County of San Diego]**

77. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

78. Prior to using any force in the corridor, DOE Deputies knew that Joey was seizing not only because his body was uncontrollably contracting but also because Joey told them he could not breathe and was about to have a seizure. In response, DOE Deputies tackled him to the ground, deployed knees strikes and unnecessary pressure to Joey's back and neck *while he was seizing and unconscious.* Minutes later, while undergoing medical treatment, DOE Deputies improperly placed a WRAP device on Joey, while he was still suffering from a seizure and in and out of consciousness, according to the medical records. This use of force, was not consented to, and was wholly unnecessary.

79. As a result, Joey was partially paralyzed and is now permanently wheelchair bound.

80. Pursuant to California Government Code Section 815.2(a), the County of San Diego itself is liable for the tortious conduct of its employees (DOE Defendant Deputies 1-5) when performed within the scope of employment. All conduct alleged herein was performed within the scope of DOE Deputies' employment.

81. DOE Deputies' conduct was done for the sole purpose of causing severe harm, distress, injury, fear, and pain, or at the very least, was done in reckless disregard of that probability, as DOE Deputies knew Joey was seizing and unconscious. When they applied the WRAP device, DOE Deputies knew Joey did not pose a harm to others because he was unconscious and in waist chains.

///

82. As a result of these acts, Plaintiff suffered from prolonged physical pain, emotional distress, and permanent immobility, entitling him to damages in an amount to be proven at trial.

83. In committing the acts alleged above, Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of Plaintiff and by reason thereof he is entitled to exemplary and punitive damages in an amount to be proven at trial.

## IX.

## SIXTH CAUSE OF ACTION

### Negligence

**[By Joey Frias Against All DOES and County of San Diego]**

84. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

85. Defendants were charged with the duty to act in accordance with the laws of state and the Constitution. They were also trained not to use their power (and force) in ways contrary to the law.

86. Prior to using any force in the corridor, DOE Deputies knew that Joey was seizing not only because his body was uncontrollably contracting but also because Joey told them he could not breathe and was about to have a seizure. Instead of summoning medical care, DOE Deputies tackled him to the ground, deployed knees strikes and unnecessary pressure to Joey's back and neck *while he was seizing and unconscious*—making matters worse.

87. Minutes later, while undergoing medical treatment, DOE Deputies improperly placed a WRAP device on Joey, while he was still suffering from a seizure and in and out of consciousness, according to the medical records.

88. As a result, Joey was partially paralyzed and is now permanently wheelchair bound.

/ / /

89. Pursuant to California Government Code Section 815.2(a), the County of San Diego itself is liable for the tortious conduct of its employees (DOE Defendant Deputies 1-5) when performed within the scope of employment. All conduct alleged herein was performed within the scope of DOE Deputies' employment.

90. Additionally, following surgery and release back into custody, DOE Deputies and Nurses were negligent in their failure to summon medical care for Joey despite his constant pleas.

91. In regards to DOE Deputies, following release back into custody, Joey asked several unknown DOE Deputies for medical aid, or for a medical request form, to no avail. Joey has also asked DOE Deputies for special accommodations so that he can safely enjoy privileges such as showers and recreation time. In response, DOE Deputies ignored his request despite knowing he is partially paralyzed.

92. Likewise, County Nurses and Medical staff also knew the hospital doctors prescribed certain accommodations for Joey. They too failed to ensure any of those accommodations were provided to Joey. Denial of these accommodations exacerbated Joey's injuries and caused him additional and prolonged harm. This inaction is unreasonable and falls below the standard of care.

93. Furthermore, County DOE Nurses and Medical staff knew that Joey required bi-weekly physical therapy in order to rehabilitate his ability to walk again. However, for reasons unknown, the County and County Nurses and Medical staff denied Joey physical therapy. In fact, since the incident Joey has only received one physical therapy session since being detained in County custody. This inaction is unreasonable and falls below the standard of care.

/ / /

/ / /

/ / /

COMPLAINT                                                                                  CASE NO.

94. Pursuant to California Government Code section 815.2(a) the COUNTY itself is liable for the tortious conduct of its employees (DOES) when performed within the scope of employment. As alleged above, all conduct set forth herein was performed within the scope of DOE Defendants' employment.

95. Additionally, pursuant to California Government Code section 845.6, the COUNTY itself is liable for its employee's failure to summon medical care for an inmate in need of immediate medical assistance. As alleged above, all conduct set forth herein was performed within the scope of DOE Defendants' employment.

96. Defendants' conduct was done for the sole purpose of causing severe harm, distress, injury, fear, and pain, or at the very least, was done in reckless disregard of that probability.

97. As a result of these acts, Plaintiff suffered the injuries and damages described above, entitling him to damages in an amount to be proven at trial.

98. In committing the acts alleged above, Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of Plaintiff and by reason thereof he is entitled to exemplary and punitive damages in an amount to be proven at trial.

## X.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgement against Defendants, for each and every cause of action, as follows:

1. For compensatory, general and special damages against each defendant, jointly and severally, in an amount according to proof;

2. For punitive and exemplary damages against each individually named defendant in their individual capacity in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

3. For costs and reasonable attorney's fees pursuant to 42 U.S.C. section 1988, California Civil Code Section 52.1, and as otherwise authorized by statute or law;

4. For any further relief that the Court may deem appropriate.

## XI.

## **DEMAND FOR JURY TRIAL**

Demand is hereby made by Joey Frias for a jury trial.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: May 13, 2022            by:   *s/ Danielle R. Pena*
　　　　　　　　　　　　　　　　　　　Danielle R. Pena, Esq.
　　　　　　　　　　　　　　　　　　　dpena@morrislawfirmapc.com
　　　　　　　　　　　　　　　　　　　Christopher S. Morris
　　　　　　　　　　　　　　　　　　　cmorris@morrislawfirmapc.com
　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Joseph Frias

COMPLAINT                                                            CASE NO.